Good morning, Your Honor. May it please the Court. Peter Herberg, I'm here on behalf of Mr. Leopoldo Oros-Rodriguez, the appellant in this matter. Your Honor, I would first like to note, just appreciate being here. This is my first time before the Ninth Circuit. Thank you. We've all gone through it. Just relax. I'm sure. Thank you. Most of us have lived through it. Thank you. Your Honor, what I would like to note on this matter is, first of all, my client was convicted of illegal reentry after deportation, 1326b2 enhancement. He was sentenced to 70 months in prison, which was the lowest he could receive under the now advisory guidelines for what is essentially, in my argument, a trespassery offense. I think we would have to agree that, at a basic level, that's what we are dealing with here. My client was coming to work. The pre-sentence report, which was provided to the Court, indicates in Employment Record, page 9, paragraph 40, that he did have an employment history in the United States in Mesa, Arizona, and in Salt Lake City, Utah. He also had been working on a factory on the border with the United States in Nogales, Sonora, which is right across from Nogales, Arizona, just prior to coming here to the United States in December of 2004. My client stated that he came here to work in Michigan with the other individual that was arrested and detained with him when they were both contacted by the Border Patrol authorities. He was coming in the middle of the winter to go to Michigan to work. In his statement of acceptance of responsibility, that's what's stated. He was going to Michigan to work. That was his motive for committing the crime of illegal reentry. The Court, in page 9 of the Sentencing Transcript, Excerpt of Record, page 33, indicated, starting in line 1, that what is really different about this case is your client wasn't coming here to work, at least apparently under the pre-sentence report. So that appears to contradict entirely what the pre-sentence report says. It appears that the Court did give my client full acceptance of responsibility. Well, I read it as he says that's ostensibly why he came. But he said, he goes on to say he wasn't coming here to work, at least apparently under the pre-sentence report. He's been a crime wave when he's been here. He has nine convictions. So sort of he may have come to work, but his actual conduct is inconsistent with that being at least his only purpose. That may be, Your Honor, but that, in effect, would be predicting the future conduct of my client. Having accepted the report and given a, essentially a very positive review of the report, and having given my client acceptance of responsibility in which he, the Court, indicated he was, in fact, coming here to work in Michigan in the middle of the winter, that would appear to be a reason to go to Michigan. I don't think if he were coming here strictly to commit crimes that he would need to go to Michigan in the middle of winter to do that. He could just stay within a few miles of the border to do that if that were, in fact, his purpose in coming on this occasion. So I believe the Court committed, in effect, an error in giving my client credit for coming for work-related purposes as part of his acceptance and then saying that apparently under the pre-sentence report he was not coming here to work. So I think that's, first of all, that's an error there. I don't believe that the other factors that are raised, which I acknowledge are unusual, I acknowledge they're unorthodox, but I also believe they are pertinent. I don't believe the Court could have addressed them adequately having stated that he was not coming here for those reasons at all, that he was coming here to work and, in fact, was coming here to commit crimes. So that even if my arguments had- Could he have come for both purposes? It would be speculation on my part to give a direct answer to that. Well, let me reframe the question. I didn't mention it. It was whether or not it was reasonable. What I meant to say, was it reasonable or not for the District Court to conclude that your client may have come to work, but he also came to commit a crime? It could be reasonable, yes. In light of my client's history of petty crimes, I could not say that that was patently unreasonable. But his recent history apparently had been working at Gainful Employment right in the border region. He did have a prior positive work history in this country and was going to Michigan in the middle of winter, presumably to work. There was no indication that when he crossed the border he was committing any other crime other than coming here illegally, with no weapons, drugs, or anything of that sort found. As to the other factors that I raised, Your Honor, I believe there's a huge disconnect in sentencing policy when it comes to individuals such as my client and what is going on in the real world that just simply is never addressed appropriately, in my opinion. And I've tried to present that without really any basis or background anywhere else to try and work from. I was bringing forward issues that I don't believe I had ever seen raised before. One of the issues is that employing individuals like my client in this country is a crime. I think we've read your statements, but I think some of these issues resonate with what's going on in Congress the last couple of weeks about whether penalties are being enforced against employers. So there is a forum for your concerns, but I'm not sure that you consider the policymaking body to account for it. I agree, Your Honor. I don't believe you can. But I believe that a factor that needs to be taken into account in the sentencing of individuals committing this type of trespassory offense is the fact that the federal government simply never prosecutes the seminal causation point of these type of crimes, which is the employers. They are breaking the law. They are committing crimes. The interim staff report of the Sentencing Guidelines Commission regarding immigration-related matters stated that there's a need to find a balance between enforcing the law on border protection and the fact that our economy is now dependent on an illegal migrant workforce. If that's the case, then what they're saying is that our economy is dependent on criminal activity, criminal activity which the government could put an end to by prosecuting the cause, which is the employers, but they never do. So, in effect, people are lured here with the prospect of employment, even though it's illegal, and the employers are able to do so because they, in effect, de facto have immunity from prosecution, which gives them impunity to put out the, I guess I could say, help-wanted signs, which people then cross the desert to fill those positions. Those arguments have been made in Congress recently. They may have, Your Honor. I just feel it's a factor that needs to be raised, and I don't believe it gets sufficient attention in sentencing hearings, particularly in the case of my client. Seventy months of incarceration for an individual who's essentially committing a trespass, who pleads guilty without a trial, who was given acceptance of responsibility. Yes, he had a criminal history. There's no denying that, but it's still a fairly harsh sentence. When one considers that his reason for being here was at least, as you noted, apparently or ostensibly to seek employment, and across the board, certainly in the District of Arizona, employers are simply untouched. I mean, there could be people employing undocumented aliens across the street from the courthouse. They won't get prosecuted, and I believe it's a factor that needs to be noted. I would respectfully like to reserve my remaining time for rebuttal. You may do so. Thank you. Mr. Counsel, I'd call your attention. My name is misspelled in your 28-J letter. I apologize, Your Honor. Just correct it next time. I'm sorry, Your Honor. If I had known, I would have done so. I must have misread it. Thank you. May it please the Court. My name is Bruce Ferg, assistant United States attorney on behalf of the government in this case. The bottom line issue here is whether the defendant's sentence was reasonable. Now, that's where we are post-Booker. We have a pending en banc, I think, question, don't we? I'm not sure we have it yet, but there's a discussion probably that we may not be aware of. Well, I know that a number of these cases where the government has been less than pleased with the results and have sought a rehearing, I'm not sure whether any have been granted yet. Well, don't. Don't hold your breath here. But with regard to this case, Mr. Herberg below and here has emphasized certain considerations about the kind of global nature of the problem of immigration. The problem is it has been suggested this is not one of the political branches to make that kind of legislative policy. Much of the question of what is an appropriate sentence for a defendant has already been hashed out in the sentencing provision, and that, of course, was eventuated in the 2001 amendments, which created the graduated scale of enhancements, or I should say adjustments, which applied in this case. And the only reason why the defendant is facing a sentence that he did is because of his lengthy criminal history. It was not just petty offenses. The thing that put him into the 16-level category was a prior sale of narcotics, for which he was. What is the Supreme Court telling us in Booker? We don't look at reasonableness? Oh, certainly we look at reasonableness. That's the ultimate test. But it also indicates that you get to determining what is reasonable by first going through the guidelines analysis, which is exactly what the district court did here. He looked at the history, and it's not just this one. Did the district court exercise any discretion with respect to reasonableness specifically in the record? Yes, I believe it did. What it indicated, what the defendant was asking for was somewhat unclear, but most of the time it appeared to be phrased in terms of a departure. And Judge Roll looked at the entire record and said, I don't believe a departure is appropriate in this case. I don't want to take you below the guideline range. But he did say, having looked at everything, including all the material that Mr. Herberg submitted, he said that at the bottom most part of the guideline range was an appropriate sentence, which to me says that he did in fact exercise his discretion and say, to me, appropriate is essentially synonymous with reasonable. In light of your past history, including this particular aggravated sale of narcotics and everything else, denying convictions, the fact that he'd already been on probation a couple of times and it hadn't helped, the fact that he'd been expelled from the country a couple of times and it hadn't helped, this was a reasonable sentence, not only within the guidelines, which I would suggest are presumed to provide a reasonable sentence, but even looking beyond them, simply looking at all of the factors in this case. Here is, as Judge Roll described him, essentially a one-man crime wave, who may have had some kind of abilities to work when he wanted to, but at the time that he was within the United States, he was either in prison or committing other crimes, many of which were not even taken into account in the criminal history five, but could have been, which is part of the reason, I guess, for not departing. So bottom line assumption is that we should be reviewing Roll's decision under the concept of Booker reasonableness. Yes, Your Honor. As I indicated in the 28-J letter, which I hope got to the court, it went out on Monday, I think that there's a good deal of guidance to be received from the Cantrell decision, which makes it very clear that essentially you have a two-step analysis. First of all, you look at the guidelines themselves and go through the same kind of analysis that you would have, and that's where the whole question of a departure comes in, because that really is a guidelines issue. And then having gotten past that point, in this case, Judge Roll decided not to depart, and that particular part of it, we suggest, is not even appropriately before the court. Not reviewable. Right, not reviewable. As under pre-Booker. Exactly. The defender cites Rodriguez-Rodriguez. You don't. In the 28-J letter. Can you deal with Rodriguez or not? I guess I didn't sign it because I'm not familiar with it, so no. I don't have a helpful response on that. If you could give it to me in a hypothetical or something, I could try and respond. Did you get a copy of the public defender's letter? The only one that I saw had to do with the recent Third Circuit case, which is another one which actually. . . This is dated March 29th, and it shows a court filing of the 3rd of April. Well, then I must have overlooked it then in picking up the case from prior counsel. Well, I think we're navigating, as you may have gathered, through the post-Booker regime, so we're acutely aware of Cantrell and Plouffe and a few other cases. That lays out, I believe, the essential approach to be taken. Ultimately, you do have to get to reasonableness, and I believe the record supports the fact that Judge Roll did, in fact, impose what is a reasonable sentence. Okay. Thank you. If I may, Your Honor. Thank you. Your Honor, I think on the topic of reasonableness, again, one of the factors that has to be taken into account in reasonableness is the nature and circumstances of the offense. What we are dealing with, again, is, and I'm not trying to belittle it, but what we are dealing with is a trespass. Well, understood. But the point is, is that the guidelines in the sentence of commission do direct that prior conduct is relevant here, and Judge Roll looked at that, and you yourself acknowledged that he could have come for two reasons. That's. . . That's correct, Your Honor, but I think that Judge Roll, in his statement of giving my client acceptance of responsibility and saying that the report was very well prepared, was in effect accepting that at least in part my client was coming here to work. And he got credit for that in the calculation. In the calculation, but in the actual sentence, it appears he did not get credit for that, and he was essentially coming here to commit crimes. There appears to have been sort of a change in position from the statements in the pre-sentence report to what Judge Roll said was in the pre-sentence report, at least apparently under the pre-sentence report. And there's nothing in the pre-sentence report that indicates in any way that my client was coming here to commit crimes. There's just no statement to that effect or that he's prevaricating or that he had some ulterior criminal motive for coming here, other than his obviously illegal presence in the country. I also believe that, again, the issue of employer sanctions leads to a charging discrepancy in that if there were no employers offering work, most people who are committing these offenses would not be here. Thank you. Okay. Well, thank you very much. I appreciate the argument on both sides, and the case is submitted.
judges: B. Fletcher, Beezer, Fisher